**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| JAMAL PORTER, | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | **Civil Action No.: 4:17-cv-882-RDP** |
| | } | |
| NANCY A. BERRYHILL, | } | |
| **Acting Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

**MEMORANDUM OF DECISION**

Plaintiff Jamal Porter ("Plaintiff" or "Porter") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claims for a period of disability and disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

On April 17, 2014, Plaintiff filed an application for supplemental security income ("SSI") alleging disability as of December 31, 2008. (Tr. 20, 39, 71). Plaintiff later amended her alleged onset date and he now contends that it is June 24, 2014. (Tr. 20, 39, 163). Plaintiff's initial application was denied by the Social Security Administration ("SSA") on July 14, 2014. (Tr. 87-89). On July 29, 2014, Plaintiff filed a request for a hearing by an Administrative Law Judge ("ALJ"). (Tr. 92).  That request was granted (Tr. 95-97), and Plaintiff received a hearing before ALJ Denise Copeland ("the ALJ") on February 8, 2016. (Tr. 39-65, 105-10).  In her decision dated April 20, 2016, the ALJ determined that Plaintiff has not been under a disability, as defined by the

Act, since his amended disability onset date of June 24, 2014. (Tr. 20-32). After the Appeals Council ("AC") denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3), that decision became final and a proper subject for this court's review.

## II. Statement of Facts

Plaintiff was born on November 15, 1975 and was 38 years old on his amended disability onset date. (Tr. 47, 174). He alleges disability due to back problems, bipolar disorder, depression, bad nerves, and attention deficit disorder ("ADD"). (Tr. 66, 71). Plaintiff last worked at Quality Grinding doing machine work from July 2008 until October 2008. (Tr. 72, 186). Prior to that, Plaintiff worked for Goodyear as a tire loader. (*Id.*). Plaintiff has not worked since 2008. (Tr. 178). Plaintiff was incarcerated from 2000-2006, and he associates his current mental condition with his experience during that time, although he says he has always tended to keep to himself. (Tr. 54, 207, 318).

Plaintiff had not seen a medical professional prior to filing his disability claim, and the record does not reflect any medical evidence prior to 2014. However, Plaintiff saw Dr. Sathyan Iyer on June 7, 2014 at the request of Disability Determination Services ("DDS"). (Tr. 71, 275-78). Dr. Iyer described Plaintiff as alert with no acute distress and noted a smell of alcohol on his breath. (*Id.*). Dr. Iyer found Plaintiff to have a history of depression probably caused and aggravated by excess alcohol consumption, as well as uncontrolled hypertension. (Tr. 278). Dr. Iyer found Plaintiff to have no significant physical limitations, but that "continued excess alcohol use could impair many functions." (*Id.*).

Approximately two weeks later June Nichols, a licensed psychologist with Gadsden Psychological Services, LLC, examined and evaluated Plaintiff at the request of DDS. (Tr. 280). Dr. Nichols described Plaintiff as neat and clean with a clear stream of consciousness and

orientation to person, place, time, and situation. (Tr. 281). She noted that Plaintiff was "visibly shaking during the interview with a tremulous voice" and that while Plaintiff's speed of mental processing was slowed, his recent memory functions were grossly intact. (*Id.*). There was no evidence of confusion in his thought processes. (Tr. 282). Dr. Nichols diagnosed Plaintiff with alcohol dependence, post-traumatic stress disorder ("PTSD"), major depressive disorder, panic disorder without agoraphobia, generalized anxiety disorder, and specific reading disorder. (Tr. 282-83). Dr. Nichols found the chance for significant improvement over next twelve months was "poor without intense intervention regarding alcohol abuse and other symptoms." (Tr. 283). Dr. Nichols explained that Plaintiff's ability to relate interpersonally and his ability to withstand the pressures of everyday work were compromised based on his current symptoms. (*Id.*). Further, Plaintiff was found to have deficits that would interfere with his ability to remember, understand, and carry out work related instructions. (*Id.*). Although she did not think that Plaintiff would be able to handle his own funds, Dr. Nichols said Plaintiff could live independently with assistance. (*Id.*).

Later that same year, on October 7, 2014, Plaintiff went to Cherokee, Etowah, Dekalb Mental Health Center ("CED") complaining of auditory hallucinations, paranoia, and depression. (Tr. 302). Plaintiff reported the auditory hallucinations were not commands but statements of his worthlessness. (Tr. 312). In the intake assessment Plaintiff was described as appearing appropriate but with a dysphoric mood and blunted affect. (Tr. 303-04). Plaintiff was unable to sit still, reported that he did not like crowds, and was unable to be alone. (Tr. 304, 312). Plaintiff reported his symptoms started while he was incarcerated but that he has always had social issues. (Tr. 312). Notes indicate that a treatment plan would be formulated. (Tr. 303).

Plaintiff visited Quality Life Health Services on October 14, 2014 complaining of hypertension, back pain, and headache. (Tr. 284). Dr. Ochuko Odjebda prescribed Plaintiff Flexeril, lisinopril, and meloxicam, yet noted that Plaintiff had a normal physical exam. (Tr. 287). The prescriptions were filled at a Walmart pharmacy in Gadsden. (Tr. 237, 301).

On November 3, 2014, Plaintiff saw Dr. Richard Grant at CED Mental Health Center ("CED"). (Tr. 301). Dr. Grant noted Plaintiff's depressed mood and affect with reports of hallucinations, delusions, and inadequate attention and concentration. (Tr. 301). Plaintiff's insight and judgment were fair and thought process was logical. (Tr. 301). Dr. Grant prescribed Plaintiff Seroquel for depression. (Tr. 301). That prescription was again filled at the Walmart pharmacy in Gadsden. (Tr. 237, 301).

Plaintiff followed up with Dr. Odjegba on November 6, 2014. (Tr. 284, 289). In addition to following-up on complaints of back pain and hypertension, Plaintiff was experiencing a cough from allergies. (Tr. 289). Lab reports indicate that Plaintiff returned on November 25, 2014 for blood work. (Tr. 296).

Medical evidence indicates that Plaintiff continued to seek therapy from CED. On November 18, 2014, Plaintiff reported that the Seroquel made him sleepy. (Tr. 300). Plaintiff also reported isolating himself and being afraid of letting people down. (*Id.*). His mood was dysphoric and his affect was constricted, yet his GAF score increased from 40 to 45. (*Id.*). Therapy notes from February 13, 2015 indicate that depression coping skills were discussed with Plaintiff and that his GAF remained at 45. (Tr. 299). Therapy notes from March 27, 2015 indicate that Plaintiff's depression had improved but that he continued to isolate himself, though he walked his daughter to the bus approximately two times per week. (Tr. 323). Plaintiff was encouraged to try to visit Dollar General one time a week to help with isolation. (*Id.*). About two months later, on

May 19, 2015, Plaintiff saw Dr. Grant. (Tr. 325). His mood was described as euthymic, and he stated that he was feeling more depressed. (*Id.*). Around the same time Plaintiff was given another prescription for Seroquel, but it does not appear Plaintiff ever filled that prescription. (Tr. 237, 324).

At a therapy session on May 20, 2015, Plaintiff noted an increase in depression symptoms due to an injury to his leg. (Tr. 325). However, Plaintiff also noted that he was motivated by his relationship with his daughter. (*Id.*). On August 17, 2015, Plaintiff reported to the therapist that he was feeling down because he was unable to walk his daughter to the bus that day. (Tr. 326). He stated that he continued to isolate himself. (*Id.*). A therapy note from November 12, 2015 indicates that Plaintiff felt overwhelmed with stress and having not had his medication for over a month. (Tr. 328). On December 1, 2015, Plaintiff reported hearing voices. (Tr. 330). Notes indicate that "Patient has relapsed due to not taking the Seroquel for several months. Not compliant with process of obtaining medication. Plan is to resume medication." (Tr. 330).

On January 26, 2016, about two months after Plaintiff's last reported visit to CED, Plaintiff's counsel referred him to Dr. David Wilson at Gadsden Psychological Services who performed a psychological evaluation. (Tr. 317-21). During the interview, Plaintiff said he felt depressed 95% of the time, but that he felt better when he saw his daughter. (Tr. 320). He said he saw his daughter two to three times a week and took her to the park. (*Id.*). According to Dr. Wilson, Plaintiff had problems with mental control and attention, problems with short term and working memory, and severe problems with mood disturbance. (*Id.*). Plaintiff's interview with Dr. Wilson also indicated that he was still taking Seroquel, although the pharmacy records show the last time he filled a prescription was on November 3, 2014, and during his last visit to CED, which was about two months before his interview, he had been off his medication for several months. (Tr.

237, 321, 330).  Dr. Wilson diagnosed Plaintiff with major depressive disorder, recurrent (severe

with psychotic features), post-traumatic stress disorder, panic disorder, history of alcohol abuse,

estimated borderline intelligence, chest pain, problems with back and legs, acid reflux, and severe

hypertension.  (Tr. 321).  Dr. Wilson opined that Plaintiff could not (1) sustain an ordinary routine

without special supervision, (2) interact appropriately with co-workers, or (3) adhere to basic

standards of neatness and cleanliness.  (Tr. 322).  Dr. Wilson further estimated Plaintiff would be

expected to fail to report to work twenty-eight out of thirty days. (*Id.*).

## III.    ALJ Decision

Disability under the Act is determined using a five-step test. 20 C.F.R. § 404.1520. First,

the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R.

§ 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that involves doing significant

physical or mental activities for pay or profit. 20 C.F.R. § 404.1572. Work activity may be

considered substantial even if it is part-time or if the claimant does less, gets paid less, or has less

responsibility than when he worked before. 20 C.F.R. § 404.1572(a). Even if no profit is realized,

work activity may still be considered gainful so long as it is the kind of work usually done for pay

or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant is engaging in substantial

gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b).

Second, the ALJ must determine whether the claimant has a severe medical impairment or

a combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does

not have a severe impairment or combination of impairments, then he may not claim disability.

(*Id.*).  If the impairment is not expected to result in death, the claimant must also meet the 12-

month duration requirement. 20 C.F.R. § 404.1509.

Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, and 404.1526. If the claimant meets or equals a listed impairment and meets the duration requirement, he will be found disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d).

If the claimant does not meet the requirements for disability under the third step, he may still be found disabled under steps four and five of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work notwithstanding his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. (*Id.*). If the ALJ finds the claimant is unable to perform past relevant work, then the analysis moves to the fifth and final step of the analysis.

In the final step of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). At this point, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since he filed his application for SSI on April 17, 2014. (Tr. 22). The ALJ found Plaintiff suffers from the severe impairments of major depressive disorder with psychosis, anxiety-related disorder, and

alcohol dependence. (*Id.*). Plaintiff's hypertension was determined to be non-severe because it did not cause more than minimal work-related limitations. (*Id.*).

Nevertheless, the ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 22-23). Concerning Plaintiff's RFC, the ALJ determined Plaintiff could perform a full range of work at all exertional levels but with some non-exertional limitations. (Tr. 25). Plaintiff was found to be able to understand, remember, and carry out simple instructions, but not more detailed or complex ones. (*Id.*). The ALJ also found that while Plaintiff should not interact with members of the public he could interact occasionally with coworkers and supervisors, meaning he should have no more than occasional conversations and interpersonal interactions. (*Id.*). Plaintiff's attention and concentration were found to be sufficient for two-hour blocks to complete an eight-hour work day with customary breaks. (*Id.*). The ALJ found that Plaintiff is able to perform his past work as a machine tender. (Tr. 30). Therefore, the ALJ concluded that Plaintiff was not disabled.

## IV.    Plaintiff's Argument for Remand or Reversal

In his Memorandum in Support of Disability, Plaintiff asserts the ALJ made three errors warranting remand. (Pl. Mem., Doc. #8 at 2). First, Plaintiff argues that the ALJ failed to clearly state grounds for repudiating the opinions of examining psychologists Dr. David Wilson and Dr. June Nichols. (*Id.*). Second, Plaintiff argues that the ALJ failed to accord proper weight to the treating psychiatrist, Dr. Fred Feist. (*Id.*). Finally, Plaintiff argues that the ALJ's decision was not based on substantial evidence. (*Id.*).

For the reasons explained below, the court finds that the decision of the ALJ is due to be upheld.

## V. Standard of Review

The only issues before the court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI. Discussion

After careful review, the court concludes that the ALJ's findings are supported by substantial evidence and that proper legal standards were applied.

## A.      Proper Weight was Accorded to the Medical Opinions in the Record.

Plaintiff challenges the ALJ's evaluation of the medical opinions of Dr. Nichols and Dr. Wilson, two one-time examiners. (Pl.'s Mem., Doc. #8 at 18-25).  The court concludes, contrary to Plaintiff's argument, that the ALJ's evaluation complies with legal precedent.

An ALJ must articulate the weight given to different medical opinions and the reasons for assigning that weight.  *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Among other things, the weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source has presented to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources (and these, as noted below, are assigned different weights): (1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" (2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and (3) a non-examining source, which is a "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case ... includ[ing] State agency medical and psychological consultants...." 20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for the opinion of a treating medical source over those of non-treating medical sources, and non-treating medical sources over non-examining medical sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, a treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'n of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). "Good cause" exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

On the other hand, the opinions of a one-time examiner or of a non-examining source are not entitled to the initial deference afforded to a physician who has an ongoing treating relationship with a plaintiff. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Still, though, medical consultants or medical experts are highly qualified medical specialists who are experts in Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. § 404.1527(e)(2)(iii), 416.927(e)(2)(iii); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180. Indeed, a medical expert's opinion may be entitled to greater weight than the opinions of treating or examining sources in appropriate circumstances, such as when the medical expert has reviewed the complete case record. *See* SSR 96-6p, 1996 WL 374180. In short, an ALJ "may reject the opinion of any physician when the evidence supports a

contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth*, 703 F.2d at 1240).

With these principles in mind, the court addresses the ALJ's assessment of the medical opinions in this matter.

### 1. The Opinions of Examining Psychologists Dr. Nichols and Dr. Wilson.

Plaintiff challenges the weight given by the ALJ to the opinions of two examining psychologists, Dr. Nichols and Dr. Wilson. (Pl.'s Mem., Doc. #8 at 18-23). Specifically, he contends that the ALJ failed to state with "some measure of clarity" her reasons for giving little weight to those opinions. (*Id.*).

In the report of her consultative psychological evaluation of Plaintiff, Dr. Nichols stated that Plaintiff had "deficits, which would interfere with his ability to remember, understand, and carry out work related instructions." (Tr. 27, 283). The ALJ afforded "limited weight" to that conclusion because it was offered before Plaintiff overcame his alcohol dependence. (Tr. 27, 283, 319). Specifically, the ALJ noted that Plaintiff "was able to stop drinking on his own in response to his doctor's admonitions regarding the effect of alcohol consumption on his blood pressure, which was at 'stroke level.'" (Tr. 27-28). Those deficits were explained in relation to Dr. Nichols's prognosis for Plaintiff, which was described as "poor without intense intervention regarding alcohol abuse and other symptoms." (Tr. 27, 283). In fact, Plaintiff had not received mental health treatment or taken any medication at the time of Dr. Nichols's evaluation. (Tr. 280). Based on this posture, the ALJ did not err in her treatment Dr. Nichols's opinion. Substantial evidence shows that after Plaintiff stopped drinking alcohol, began taking medication, and began seeing a psychologist, his functioning improved. (Tr. 319, 324-26, 328). Thus, in this context, the opinion

of a one-time examiner is not entitled to great weight, *McSwain*, 814 F.2d at 619, and the ALJ clearly set forth her reasons for according Dr. Nichols's opinion limited weight.

The ALJ also gave limited weight to the opinion of consulting examiner Dr. Wilson. (Tr. 28). Dr. Wilson stated in his notes that Plaintiff appeared neat in hygiene and appearance. (Tr. 319). His speech was clear and normal in rate, and he was cooperative and respectful throughout the interview. (*Id.*). Dr. Wilson opined that Plaintiff (1) could understand, remember, and carry out simple instructions but he could not sustain appropriate interactions and (2) could not maintain a schedule and would miss twenty-eight days of work out of a thirty-day period because "[h]is ability to withstand the pressure of day to day occupational functioning is highly impaired." (Tr. 28, 321-22). Dr. Wilson further stated Plaintiff was severely depressed and highly anxious, and that he was on medication which made him sleepy. (Tr. 321). Yet, the pharmacy records reveal Plaintiff was not taking his medication at the time he was examined by Dr. Wilson. (Tr. 237). According to the report from Walmart pharmacy printed three days before Plaintiff went to see Dr. Wilson, Plaintiff first filled his Seroquel prescription on November 3, 2014, yet did not refill that prescription any time after the date Plaintiff was determined to have been non-compliant with his medication. (Tr. 237, 328). Refusal to follow prescribed medical treatment without good reason has been found to be sufficient reason to preclude a finding of disability. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). Although "good reason" can be lack of ability to pay, the ALJ rejected this defense for Plaintiff because the record indicated he had sufficient means to purchase cigarettes and alcohol. (Tr. 27).

The ALJ found that the evidence did not support a finding that Plaintiff "is so mentally debilitated that he would miss 28 days of work in a month and unable to even maintain basic standards of neatness, cleanliness, and socially appropriate behavior." (Tr. 28). Because an ALJ

may properly reject the opinion of any physician when the evidence supports a contrary conclusion, *McCloud*, 166 F. App'x. at 418, the finding of the ALJ is due to be upheld.

## 2. The Opinion of "Treating Physician" Dr. Fred Feist.

Plaintiff also challenges the weight given by the ALJ to the opinion of Dr. Fred Feist, whom he contends is a treating psychologist. (Pl. Mem., Doc. #8 at 25-27; Pl. Reply, Doc. #10 at 9-10). Specifically, he contends that the ALJ failed to state her reasons for giving little weight to Dr. Feist's opinion that Plaintiff is not "mentally or physically able to work" on a "permanent" basis. (Tr. 234). The court disagrees.

A treating physician is a claimant's "own physician ... who has provided [claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." *Nyberg v. Comm'r of Soc. Sec.*, 179 Fed.Appx. 589, 591 n.3 (11th Cir. 2006) (quoting 20 C.F.R. § 404.1502). The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips*, 357 F.3d at 1240. (citing *Lewis*, 125 F.3d at 1440). The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error. *See Lewis*, 125 F.3d at 1440.

An ALJ is not required to accept conclusory statements from medical sources, even a treating source, that a claimant is unable to work, because the decision on that issue is not a medical question, but is a decision "reserved to the Commissioner." 20 C.F.R. §§ 404.1527(d) & 416.927(d). A medical opinion is a statement from an acceptable medical source that reflects judgments about the nature and severity of a claimant's impairments and what he can still do despite those impairments, whether physical or mental. 20 C.F.R. 416.927(a)(1).

Opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, ... but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). A doctor's evaluation of a claimant's "condition and the medical consequences thereof, not [an] opinion[] of the legal consequences of his condition" is what counts. *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative because is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1546(c).

Here, as the ALJ noted, there is no indication the Dr. Feist ever treated Plaintiff. (Tr. 28). Although Dr. Feist's signature appears on a form dated January 14, 2015 in which he opined that work requirements should be waived for Plaintiff so that he may receive SNAP benefits, no treatment records from CED Mental Health are signed by Dr. Feist or otherwise indicate that Dr. Feist was Plaintiff's treating psychologist. Plaintiff points to two additional signatures from Dr. Feist: one on a Problem Assessment dated October 7, 2014, and another on a Consumer Diagnosis Form dated November 18, 2014.[1] (Tr. 316, 329). But these signatures are not enough to buttress an argument that the ALJ's finding is unsupported by substantial evidence. As another court has noted, two visits are not enough to establish a physician as a treating source. *Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1303 (S.D. Fla. 2012) (holding ALJ did err in discounting the opinion of an alleged treating physician because the physician had only seen the claimant twice and therefore was not a treating source entitled to more weight). The ALJ explained her reasoning

---

[1] The signature on these forms is illegible but are purported by Plaintiff to be Dr. Feist's. (Pl.'s Mem., Doc. #8 at 8-9). Although the Commissioner acknowledges the signatures are illegible, she acknowledged that they may belong to Dr. Feist. (Doc. # 9 at 12).

for giving limited weight to the findings of Dr. Feist, and her reasoning is supported by the record. *See* 20 C.F.R. § 404.1527(c)(2); *Crawford*, 363 F.3d at 1160 (11th Cir. 2004).

Alternatively, even if Dr. Feist could be considered a treating physician, his opinion would not be entitled to more weight from the ALJ. Feist's signature on the SNAP benefit form expressing Plaintiff's inability to work is merely conclusory, and conclusory opinions are not medical opinions and, although they cannot be ignored, whether a claimant is disabled is a determination for the ALJ to make, not a psychologist. *See* 20 C.F.R. § 404.1527(e); *Edwards*, 937 F.2d at 583) (rejecting a treating physician's opinion that a claimant could only work 4-hour days when the opinion was not accompanied by clinical data or other supporting information). Further, an ALJ may discount opinions not consistent with the record as a whole. 20 C.F.R. § 404.1502. Although Dr. Feist claimed Plaintiff's inability to work would be permanent, in CED notes recorded about 10 weeks later, Plaintiff's depression was found to have improved. (Tr. 323).

**B.    The ALJ's Finding is Based on Substantial Evidence Including the Testimony of the Vocational Expert.**

Finally, Plaintiff argues that the decision of the ALJ is not based on substantive evidence. (Pl. Mem., Doc. # 8 at 27-29).  In support of this argument, Plaintiff contends that the testimony of the vocational expert ("VE") was not based on a correct statement of Plaintiff's limitations.[2] (*Id*. at 27).

For a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of Plaintiff's impairments. *Vega v. Comm. of Social Security,* 265 F.3d 1214, 1220 (11th Cir. 2001). Importantly, the ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported. *Crawford*, 363 F.3d at 1161.  As such, the

---

[2] Plaintiff's brief does not explain which impairments should have been included but rather quotes in full the VE testimony from the transcript. Therefore, the court addresses here the impairments and limitations Plaintiff's attorney included in questioning during the hearing.

hypothetical need only include limitations supported by the record. *Jones v. Apfel,* 190 F.3d 1224, 1229 (11th Cir. 1999).

Here, the ALJ asked the VE whether Plaintiff would be able to perform past relevant work with certain mental and social limitations but no exertional limitations. (Tr. 61). Exertional limitations are those that affect one's ability to meet the strength demands of the job. 20 C.F.R. § 404.1569a. These demands include sitting, standing, walking, lifting, carrying, pushing and pulling. (*Id.*). Plaintiff's counsel conceded at the ALJ hearing that there was no objective evidence to support a conclusion that Plaintiff had back problems that could result in exertional limitations. (Tr. 40). Dr. Iyer also found Plaintiff to have no exertional limitations. (Tr. 278). Therefore, the failure to include exertional limitations in the hypotheticals was not error.

Plaintiff's counsel questioned the VE using a hypothetical including limitations that Plaintiff would be unable to interact with supervisors and co-workers and would have to lie down for 2 hours every 8-hour workday, but the ALJ was under no obligation to consider the response to this hypothetical. It is reasonable for an ALJ to reject expert testimony where the objective medical evidence ultimately did not coincide with the hypothetical assumptions posed to the VE. *Stone v. Comm'r of Soc. Sec. Admin.,* 596 F. App'x 878, 879 (11th Cir. 2015). There is no evidence in the record to support that Plaintiff would need to lie down for two hours every full work day or be completely unable to interact with others. To the contrary, the medical evidence of the record shows Plaintiff was encouraged by his therapists at CED to have more interaction with others as part of his treatment plan, and nowhere in the record is it indicated Plaintiff should or would need to lie down because of his symptoms. (Tr. 323, 325).

Here, Plaintiff's RFC is supported by the objective medical evidence and was properly relied on by the ALJ in framing hypothetical questions to the VE. And, based upon that framing

of the hypotheticals, the ALJ did not err in crediting the VE testimony. *See Bouie v. Astrue,* 226 F. App'x 892, 894-95 (11th Cir. 2007) (holding when ALJ poses hypotheticals supported by an RFC based on substantial evidence the questions are complete and probative).

**V.     Conclusion**

After careful review, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence, and the proper legal standards were applied in reaching this determination. The Commissioner's decision is therefore due to be affirmed, and a separate order in accordance with this Memorandum Decision will be entered.

**DONE** and **ORDERED** this December 10, 2018.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE